**Steve TOCKMAN, d/b/a Steve's Sunoco Service Station, Plaintiff-Respondent,**

v.

**SHOWER DOORS, INC., et al., Defendants-Appellants.**

**No. 38379.**

Missouri Court of Appeals, St. Louis District, Division Three.

May 16, 1978.

Edward Lawson, Clayton, for plaintiff-respondent.

Warren W. Davis, Davis & Davis, Clayton, for defendants-appellants.

KELLY, Judge.

Steve Tockman, d%6lb/a Steve's Sunoco Service Station, instituted this action in the Circuit Court of St. Louis County naming as defendants therein the St. Louis Shower Door Company, a corporation, and Shower Doors, Inc., a corporation, seeking to set aside an allegedly fraudulent conveyance of two motor vehicles, a 1969 GMC van and a 1968 GMC van, on November 24, 1972. As initially filed, this petition was in two counts. In Count I Mr. Tockman prayed for a decree that the conveyance of the two vehicles from St. Louis Shower Door Company, Inc., to Shower Doors, Inc., be adjudged fraudulent and void as to him and that it be set aside and held for naught; that the property be ordered sold for satisfaction of a judgment he had obtained against St. Louis Shower Door Company, in the Magistrate Court of St. Louis County, and an injunction restraining the defendant from disposing of said vehicles or paying out any of the proceeds thereof. Count II sought punitive damages from both defendants in an amount of $5,000.00.

Subsequently, on April 23, 1973, plaintiff amended his petition by giving credit to defendants for $273.62 received from sale of a 1969 Pontiac stationwagon by way of execution and by amending, by interlineation, the "Wherefore clause in Count I" of his petition to pray for a judgment against the defendants in the amount of $1,826.38 plus interest.

The cause came on for trial on February 9, 1976, and was tried to the court without a jury. On July 2, 1976, Findings of Fact, Conclusions of Law and Judgment were entered by the trial court whereby judgment was entered in favor of the plaintiff and against the defendant Shower Doors, Inc., in Count I of the petition, in the amount of $1,826.38 plus interest in the amount of $427.47 for a total of $2,253.85. Judgment on Count I was found in favor of defendant St. Louis Shower Door Company. Judgment in Count II of the petition was found in favor of both of the defendants.

Thereafter, on July 30, 1976, defendant Shower Doors, Inc., filed its notice of appeal from the judgment on Count I.

On appeal, the appellant, Shower Doors, Inc., contends initially that the trial court erred in refusing to grant its motion to dismiss plaintiff's petition at the close of plaintiff's case for the reason plaintiff failed to introduce evidence sufficient to meet his burden of proof.

■ Inasmuch as this was a court tried case the scope of review is that set out in Rule 73.01.3 V.A.M.R. and we must (a) review the case upon both the law and the evidence as in suits of an equitable nature, (b) giving due regard to the opportunity of the trial judge to have judged the credibility of the witnesses. The Supreme Court, in *Murphy v. Carron*, 536 S.W.2d 30, 32 [1–3] (Mo. banc 1976), has told us that "appellate 'review . . . as in suits of an equitable nature,' as found in Rule 73.01, is construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." We find that this case suffers from none of the aforementioned infirmities and we therefore affirm.

The facts developed at trial proved that the respondent had obtained a judgment

against the defendant St. Louis Shower Door Company for $2,100.00 plus costs in the Magistrate Court of St. Louis County on May 25, 1972. This judgment was satisfied to the extent of $273.62 through the sale on execution of a 1969 Pontiac stationwagon owned by the St. Louis Shower Door Company. Subsequently, two executions run on this judgment were returned unsatisfied.

According to Morley Gluskoter, President of St. Louis Shower Door Company from 1950 to 1971, and also its majority stockholder, St. Louis Shower Door Company engaged in the business of manufacturing shower doors and selling of patio doors, mirrors and medicine cabinets. Sometime in the 1960's St. Louis Shower Door Company "took over" Shower Doors, Inc., and after that Shower Doors, Inc., became inoperative although it continued payment of its annual franchise tax.

The ownership of Shower Doors, Inc. was acquired by St. Louis Shower Door Company by the transfer of the stock of Shower Doors, Inc., and its inventory to St. Louis Shower Door Company in exchange for which St. Louis Shower Door Company acknowledged an indebtedness to Shower Doors, Inc., of $13,000.00. This indebtedness was never reduced to writing, was not satisfied prior to 1971, and continued being carried on the books of St. Louis Shower Door Company. Mr. Gluskoter explained how this debt of $13,000.00 came about by testifying: "That was (sic) the assets that my brother-in-law had at the time I took him back with me; that was his entire assets in becoming my partner again, my partner in St. Louis Shower Door Company."

Mr. Gluskoter sold his interest in St. Louis Shower Door Company in 1971 for an unspecified cash consideration.

Donald Gilden, who at the time of trial was President of both St. Louis Shower Door Co. and Shower Doors, Inc., since about September 24, 1971, had been an employee of St. Louis Shower Door Company from 1959 to 1971, and became President of both companies when Mr. Gluskoter sold his interest in the companies. Thereafter the officers of the two corporations were the same. Mr. Gilden testified that on February 28, 1972, St. Louis Shower Door Company filed a security agreement granting to Shower Doors, Inc. a security interest in various assets. This security agreement recites that the items listed on a list attached to the security agreement as collateral for said agreement, and the two vehicles which are the object of this litigation are listed thereon.

The chronology of events relevant to our decision as gleaned from the transcript are:

| | |
|---|---|
| 1960 (sometime) | St. Louis Shower Door Company acquired the stock and the assets of Shower Doors, Inc. |
| 9–24–71 | St. Louis Shower Door Company ceased active operation, and Mr. Gluskoter sold his interest in both companies. |
| 12–1–71 | respondent commenced law suit against St. Louis Shower Door Company in Magistrate Court, St. Louis County. |
| 2–8–72 | Security agreement filed.[1] |
| 5–25–72 | Consent judgment entered in Tockman v. St. Louis Shower Door Company for $2,100.00. |
| 5–25–72 | Title to property subject of this appeal transferred[2] from St. Louis Shower Door Company to Shower Doors, Inc. |
| 8–2–72 | Execution levy issued on these three vehicles. |
| 11–15–72 | Pontiac stationwagon sold at sheriff's sale for $950.00 subject to lien; respondent received from this execution the sum of $273.62. |
| 11–24–72 | This suit instituted. |

1. Although the parties stipulated at trial that the security agreement was filed on February 28, 1972, the exhibit itself, Pltf's Ex. 3, shows that the filing date is February 8, 1972. This discrepancy in the evidence is not significant in resolving the issues in this case.
2. The documents which are evidence of the registration of the three vehicles—Pltf's Ex.'s 3,

4.5—are of very poor quality and the dates thereon are almost illegible. Appellant, however, establishes the date of registration as of May 25, 1972 and respondent does not dispute that; we must, therefore assume that the correct date is May 25, 1972.

After the trial on February 9, 1976, the trial court found that the transfer of the title to the three vehicles from St. Louis Shower Door Company to Shower Doors, Inc., was for the purpose of defrauding creditors, without good faith, and in violation of § 428.020 RSMo. 1969, and entered the judgment from which this appeal has been taken.

The point raised initially by appellant is directed to the failure of the trial court to sustain its motion to dismiss *at the close of the plaintiff's evidence.*[3]

■ The essential elements of a cause of action for a fraudulent conveyance include (1) a conveyance (2) of goods and chattels (3) with the intent to hinder, delay or defraud creditors. Section 428.020 RSMo. 1969. The sole contested issue at trial was the intent of the defendant in making the transfer. However, in arriving at the question of intent in a case of this kind Missouri courts have recognized that there are circumstances which are "badges of fraud" that may be employed to determine the presence of fraud. Among these are the following:

1. inadequate consideration for the conveyance;
2. a conveyance in anticipation of suit;
3. transfer of all or nearly all of the debtor's property; and
4. the debtor's insolvency subsequent to the conveyance.

*Allison v. Mildred,* 307 S.W.2d 447, 454[7] (Mo. 1957); *Morris v. Holland,* 529 S.W.2d 948, 953[8, 9] (Mo.App. 1975).

■ In this case there is evidence from which the fact-finder might find that the consideration for the three vehicles was inadequate because it was a long standing and pre-existing debt between defendants, which had been on the books of St. Louis Shower Door Company for a period in excess of the statute of limitations. Section 561.120 RSMo. 1969. A "stale claim" has been held to be a badge of fraud in this state. *Brennecke v. Riemann,* 102 S.W.2d 874, 877[2] (Mo. 1937). In the posture in which this Point is presented to us appellant is not entitled to the benefit of the evidence of Mr. Gilden relative to a tax liability of St. Louis Shower Door Company at the time the new owners took it over which came out on cross-examination by respondent's counsel. Even if he was, he did not testify that the tax liability was paid by them.[4]

In addition to the foregoing, there was evidence that the conveyance of these vehicles was made in anticipation of suit. The institution of the suit in Magistrate Court on December 1, 1971, pre-dated the filing of the Security Agreement, executed on Sept. 24, 1971, but not filed until February 8, 1972, some 17 days prior to the entry of the consent judgment against St. Louis Shower Door Company on May 25, 1972, the same date on which the titles to these vehicles were transferred.

■■ There is also, at this point in the case, prima facie evidence of insolvency in the return of the execution unsatisfied, *Glover v. Berger,* 75 Wyo. 191, 294 P.2d 793, 800[11] (1956). When a voluntary conveyance without consideration is shown, the party attacking the transfer makes a prima facie case and the burden of going forward with evidence to show that the conveyance was not fraudulent, including the fact that the grantor was not insolvent at the time of the conveyance, or was rendered insolvent

---

3. Appellant's discussion of this Point in its brief presents a sufficiency of the evidence argument and includes therein not only plaintiff's evidence but its own evidence offered in defendant's case. Argument of this type in the posture in which the Point is raised—i.e. whether plaintiff, at the close of his evidence made a submissible case,—is inappropriate, and in ruling this Point we are required to view all of the evidence most favorably towards plaintiff, give him the benefit of all reasonable inferences deducible therefrom, and disregard defendant's evidence unless it aids plaintiff's case. *Woodford v. Illinois Cent. Gulf R. Co.,* 518 S.W.2d 712, 715[1] (Mo.App. 1975).

4. Appellant's sole witness did not testify directly on this issue, and on cross-examination stated that the $13,000.00 due on taxes was paid by P. M. Investment. No further explanation was adduced as to why P. M. Investment paid these taxes.

by it, passes to the party who received the conveyance. *Oldham v. Wright,* 357 Mo. 170, 85 S.W.2d 483, 485[7] (1935); *Hartman v. Lauchli, Trustee,* 238 F.2d 881, 888–889 (8th Cir. 1956).

 We hold that, with these indicia of fraud in evidence in this case, it was not error for the trial court to overrule appellant's motion for directed verdict at the close of respondent's case, and find this Point to be without merit.

 Appellant next contends that the judgment against Shower Doors, Inc. is inconsistent with the judgment in favor of St. Louis Shower Door Company. It argues that the judgment in favor of St. Louis Shower Door Company was predicated upon the failure of the respondent to prove the necessary element of his cause of action that St. Louis Shower Door Company intended to defraud it when it transferred these vehicles to Shower Doors, Inc.

The trial court in its Conclusions of Law specifically stated: "(T)he intent underlying the transaction of the transfer of the vehicles on May 25, 1972, was for the purpose of hindering, delaying, and defrauding plaintiff . . . " We conclude that this finding of the trial court refutes this argument.

 Furthermore, from the evidence it is clear that St. Louis Shower Door Company had no legal rights in these vehicles which might be affected by any judgment of the trial court. Under these facts, where the grantor has relinquished all legal interest in the property and the creditor has obtained a judgment against the grantor, the grantor is not even a necessary party to the action to set aside the transfer to hinder, delay or defraud the creditor, since the grantor could not be prejudiced by a determination subjecting property to the payment of his debts and therefore has no interest in the lawsuit. *First National Bank of Monett v. Vogt,* 344 Mo. 284, 126 S.W.2d 199, 201[3] (1939). Any judgment against St. Louis Shower Door Company was unnecessary to enforce respondent's rights with respect to these vehicles which

had been transferred to Shower Doors, Inc. The judgment appealed from is not erroneous.

Affirmed.

GUNN, P. J., and WEIER, J., concur.