**STADIUM BANK, Respondent,**

v.

**Curley MILTON et al., Appellants.**

**No. KCD 29892.**

Missouri Court of Appeals,
Western District.

Oct. 29, 1979.

Richard L. Colbert and Mildred L. Watson, North, Colbert & Fields, Kansas City, for appellants.

Jim Tom Reid, Shockley, Reid & Koger, Kansas City, for respondent Stadium Bank.

Justin J. Johl, Asst. Counsel, Missouri State Highway Commission, Kansas City, for respondent Mo. St. Hwy. Comm.

Fred Bellemere, Jr., Bellemere, Manford & Bellemere, Kansas City, for respondents, Charles Mahany and Vera Mahany.

Before SHANGLER, P. J., WASSERSTROM, C. J., and CLARK, J.

SHANGLER, Presiding Judge.

This multiple litigation arises from an acquisition by the Missouri State Highway Commission of the Milton property by eminent domain and a consequent relocation of the Miltons under the Uniform Relocation Assistance Act, 42 U.S.C. §§ 4601 et seq. To facilitate replacement of the dwelling taken from the Miltons, the Highway Commission advanced to an escrow account at the Stadium Bank the sum of $4,150 authorized under the Act which the Miltons then pledged for a loan from the Stadium Bank—in an equivalent sum—used by the Miltons to conclude a contract for purchase of a relocated dwelling from the Mahanys. The Miltons thereafter refused to perform the contract for purchase, made default on the note obligation to Stadium Bank, and the litigation ensued.

The original action was a suit in two counts by the Stadium Bank. Count I was against Curley Milton and Margaret Milton, husband and wife, on the promissory note executed by them in pledge of the escrow account to their benefit. That ninety-day obligation went unpaid, and after evidence, the court entered judgment for the Stadium Bank for $5,014.13, principal and interest, and $500 for an attorney fee for collection. The Miltons defended by formal plea of fraud in particulars: that the Stadium Bank "did not allow" the Miltons to read either the promissory note or the escrow agreement prior to their signatures; that the plaintiff Bank did not "attempt to explain to [them] the documents they signed," and that the Miltons "relied upon the misleading statements and representations of [the Bank]." The only evidence in defense was that of Ms. Milton who contended she had never seen the note before and had made no payment under that instrument.

There was no doubt of the Milton endorsements on the Bank check for the proceeds of loan or that payment had been made on that instrument. The judgment on Count I was made interlocutory and, in due course, became final. The defendants Milton do not appeal from the judgment in Count I.

Count II alleges that Stadium Bank holds $4,150 as escrow agent by agreement between the Highway Commission which deposited the fund under the terms of the Act and the Miltons to whom the fund became payable on the event of their purchase and occupancy—within the year—of a replacement habitation. The petition alleges further that although the Miltons purchased a replacement habitation, they refused to occupy that dwelling so that, by terms of agreement, the escrow fund may not be paid to the Miltons, but that the Miltons might yet occupy the new premises and make demand on the Bank for the fund. Count II seeks an order that the Miltons and the Highway Commission interplead to enable the court to adjudicate right to the fund and thereby discharge the Bank from liability. The defendants Milton made formal defense to Count II, once again on a plea of fraud; both unspecified—that the "fraudulent misrepresentation of [the Bank] alone and in conjunction with [the Mahanys] and the Highway Commission" and specified: that "[the Miltons] were not allowed to fully read said [escrow] agreement nor was the same fully explained to them by [the Bank] or the [Highway Commission]." On hearing, the court entered judgment for the Highway Commission on undisputed testimony of the defendants Milton that time for purchase and occupancy of a replacement dwelling had lapsed. The judgment on Count II was made final for purpose of appeal. The Miltons do not appeal from the judgment in Count II.

The appeals are from a third party petition by the Miltons against the Mahanys [sellers of the replacement dwelling], a crossclaim by the Miltons against the Highway Commission, and a counterclaim by the Miltons against the Stadium Bank, each on allegations of fraud, and each adjudicated adversely to the Miltons. These actions were separated from Count I and Count II for trial to a jury. At the threshold of trial, however, counsel submitted to the court the questions of law raised by the amendment of pleadings. These were considered on exhibits and arguments of counsel, and ruled adversely to the Miltons.

The third party petition was concluded against the Miltons on principles of res judicata. The court ruled that the cause of action for fraud was determined by the judgment entered in the District Court of Wyandotte County, Kansas: Charles E. Mahany and Vera Jean Mahany v. Curley Milton and Margaret Elizabeth Milton and the Gibraltar Savings & Loan Association, Number 55309–B. That proceeding discloses that the Miltons contracted to purchase the Mahany residence as a replacement dwelling for an agreed $14,000 purchase price. To facilitate the transaction, the Highway Commission agreed to deposit the $4,150 relocation benefit into the Stadium Bank escrow account for release on actual occupancy by the Miltons of the Mahany property. The loan from the Stadium Bank of $4,150 to the Miltons issued contemporaneously and the Miltons executed the ninety-day promissory note [the subject of Count I] secured by their interest in the escrow account. Thereupon, the Miltons obtained a $5,500 mortgage loan from Gibraltar Savings & Loan to complete the purchase price and the Mahanys delivered their deed to Gibraltar. The Miltons, however, refused to perform further. Gibraltar cancelled the mortgage obligation but the Mahanys sued the Miltons in the Kansas action for specific performance of the agreement to purchase the dwelling. The answer of the Miltons set up the fraud of the Mahanys to vitiate the contract and, by counterclaim, asserted damages from the fraud. The causes were tried to a jury and the issues determined in favor of the Mahanys and against the Miltons. The judgment became final and the time for appeal lapsed.

■ It is the contention on appeal that the third-party petition against the Maha-

nys continues intact because they did not meet the burden to prove the affirmative defense of res judicata. That defense may be raised by motion under Rule 55.27 to dispose of an action rendered groundless by uncontroverted facts. *Williams v. Williams*, 497 S.W.2d 415, 417[1–3] (Mo.App. 1973). The motion will not prove itself but must be shown by evidence. *Randall v. St. Albans Farms, Inc.*, 345 S.W.2d 220, 223[2] (Mo.1961). In this case, the issue of res judicata by reason of the Kansas judgment was not controverted by any pleading. It was admitted. The proponents of that defense, nevertheless, adduced not only the judgment, authenticated under the Act of Congress, but also the pleadings and other entries of the Kansas proceeding.

The rule of res judicata operates to prevent a party or privy to relitigate facts or questions in issue in a former action between the same parties which has been settled by a judgment on the merits, whatever form the issue may take in the subsequent action, or whether upon the same or different cause of action, claim, demand, ground or theory. *Varnal v. Kansas City*, 481 S.W.2d 575, 579[3] (Mo.App. 1972). The test for res judicata, therefore, is whether the litigations present an identity of issues. *Jackson v. Hartford Accident and Indemnity Company*, 484 S.W.2d 315, 321[1, 2] (Mo.1972).

The petition by the Mahanys in the Kansas action pleaded the contract to purchase the replacement dwelling for $14,000, the deposit of money as part performance, the agreement by the Miltons to apply the Highway Commission [escrow fund] to the purchase price, and their agreement to complete performance by a mortgage loan. The answer of the Miltons alleged that they were misled to believe the dwelling was to be sold for $12,000 and not the $14,000 recited in the contract of purchase, that the Mahanys falsely represented they would carry the purchase balance due free of interest, but that examination of the instrument signed by the Miltons disclosed an indebtedness for the balance to the Gibraltar Savings and Loan at interest; that the

Mahanys falsely represented they would recondition the dwelling, which they then refused to do. These allegations of fraud were incorporated by reference in a counterclaim against the Mahanys for actual and punitive damages.

The third party petition merely iterates the same fraud against the Mahanys as in the Kansas action: the misrepresentation of the purchase price to be $12,000 rather than the eventual $14,000, the deception as to the nature of the promissory obligation—at interest rather than interest free—and the false promise to recondition the dwelling. These contentions and the cause of action which they assert, without doubt, are identical to those pleaded by the Miltons against the Mahanys in the prior action and are concluded by the Kansas judgment. They are not subject to relitigation by the third party petition. *Butler v. Manley*, 416 S.W.2d 680, 682[1, 2] (Mo.App. 1967). The third party petition alleges, in addition, a spate of incidences of fraud by the Mahanys in concert with the Stadium Bank to induce the promissory note and escrow agreement, not pleaded in the Kansas action. These grounds, however, relate to the same delict: the fraudulent inducement to the purchase of the Mahany real estate. The fraud pleaded against the Mahanys in concert with the Stadium Bank merely asserts a cumulative ground for the right to damages from the same operative facts. A party may not litigate an issue and then, upon adverse verdict, revive the same claim on contentions which could have been brought before the court of the first proceeding. *Reis v. La Presto*, 324 S.W.2d 648, 652[2–5] (Mo.1959). To allow the third party pleading as a separate recovery would be to fission the single cause of action which accrued to the Miltons from the wrong done them by the fraudulent inducement to contract practiced by the Mahanys. *Jackson v. Hartford Accident and Indemnity Company*, supra, l.c. 321[3]; *Varnal v. Kansas City*, supra, l.c. 579[3].

The burden to prove res judicata was met by evidence of the Kansas judgment and the congruence of that cause of

action with the primary right asserted by the third party petition pleadings. *Williams v. Williams*, supra, l.c. 417[1–3]. The court properly adjudicated the third party claim in favor of the Mahanys by dismissal of the petition.

■ The court also dismissed with prejudice the crossclaim for damages for fraud by the Miltons against the State Highway Commission on the ground that the defense of sovereign immunity to tort [then extant as the rule of decision in such cases] barred recovery. The Miltons do not doubt that premise of adjudication. They contend, nevertheless, that the crossclaim alleges a valid, nontortious cause of action for failure of statutory duty by the Highway Commission under the Uniform Relocation Assistance Act "to fully explain the escrow agreement and the legal effect" of other kindred aspects of the relocation transaction.

That enactment [42 U.S.C. §§ 4621 et seq.] has for a purpose "the fair and equitable treatment of persons displaced as a result of . . . federally assisted programs" [§ 4621]. To that end, whenever a land acquisition under such a program displaces any person, the federal agency is required to make payment for moving and related expenses [§ 4622]. To allay economic injury from the displacement, any person who occupies land taken is entitled to "current and continuing information on the availability, prices, and rentals of comparable decent, safe, and sanitary sales and rental housing," assistance to obtain a suitable replacement location, and other advisory service to diminish the hardship of relocation [§ 4625].

■ The crossclaim contends that the Uniform Relocation Assistance Act obliged the Highway Commission to ensure that the Miltons understood perfectly the implications of the loan-escrow transaction with the Stadium Bank and the purchase transaction with the Mahanys. The terms of the Uniform Relocation Act simply do not require a state agency to cosset a relocatee

through the replacement purchase process or act as a surrogate lawyer. The authority cited by the Miltons, *Tullock v. State Highway Commission of Missouri*, 507 F.2d 712 (8th Cir. 1974), merely explains that the enactment only directs the agency shall assist to allay the *economic* hardship of dislocation by means of benefits and the certainty of "decent, safe, and sanitary replacement dwellings." *Tullock*, supra, l.c. 716. The crossclaim raised no question of fact and was properly adjudicated against the Miltons on the pleadings as a matter of law. *Cantor v. Union Mutual Life Insurance Company*, 547 S.W.2d 220, 224[2–8] (Mo.App.1977).

■ The court determined also that the Kansas judgment foreclosed the Milton counterclaim against the Stadium Bank on principles of collateral estoppel and dismissed that cause of action. The rule of collateral estoppel bars a litigant to claim as to subject matter concluded by a judgment either against the party to the proceeding or one in privity. *Oates v. Safeco Insurance Company*, 583 S.W.2d 713 (Mo. banc 1979). A *privy* within that doctrine means one so related by identity of interest with the party to the judgment that such party represented the same legal right. *Drainage District No. 1, Reformed, of Stoddard County v. Matthews*, 361 Mo. 286, 234 S.W.2d 567, 574[12, 13] (1950).

■ The pleading by the Miltons, concluded by the Kansas judgment, attempts an action at law for actual and punitive damages against the Mahanys for fraudulent inducement to contract for real estate. The present counterclaim by the Miltons against Stadium Bank pleads for rescission [and punitive damages][1] for fraudulent inducement to execute the promissory note and escrow agreement of the real estate transaction. Whatever confusion of contradictory remedies and proliferated causes of action from one primary right the judgment and pleadings pose [*Dill v. Poindexter Tile Company*, 451 S.W.2d 365, 371[9–15] (Mo.App.1970); *Lee v. Guettler*, 391 S.W.2d

1. We do not determine whether a purchaser who rescinds may validly plead recovery for

punitive damages. *Boswell v. Brinckmann*, 579 S.W.2d 781, 783[3, 4] (Mo.App.1979).

311, 313[1–3] (Mo.1965)] for determination of identity of interest, privity and the bar of collateral estoppel, in any event, have become irrelevant. The judgments on Count I and Count II of the Stadium Bank petition against the Miltons are res judicata to the contentions of the counterclaim.

For reason not at once apparent the counterclaim by the Miltons against the Stadium Bank was separated from Count I and Count II for trial by jury. That pleading, however, was a claim for the equity of rescission of the note obligation to Stadium Bank—a remedy within the discretion of a chancellor. *Hostler v. Holland Furnace Company*, 327 S.W.2d 532, 534[2] (Mo.App. 1959). Those were the very issues determined by the judgments in Count I and Count II of the original Stadium Bank petition against the Miltons.

Count I alleged execution by the Miltons of the promissory note and their default. The Milton *answer* to that count set up the fraud of the Bank by failure to explain the documents or to allow the Miltons to read them, and the consequent nullity of the transaction. The Milton *counterclaim* alleged the fraud of the Bank by failure to explain the promissory note and escrow agreement or to allow the Miltons to read them as the inducements to those undertakings. Count I was adjudged for the Stadium Bank and, although given interlocutory effect,[2] was made final concurrently with the dismissal of the counterclaim, crossclaim and third party petition of the Miltons, and absent appeal, has become conclusive.

Count II alleged execution by the Miltons and the State Highway Commission of the escrow agreement, the purchase of the replacement habitation, the refusal of the Miltons to occupy the dwelling in violation of that agreement, the jeopardy of the Bank for liability to both the Miltons and the State Highway Commission for the funds, and requested that the contenders be made to interplead. The Milton *answer* alleged the nullity of that transaction from the fraud of the Bank [conjunctively with the Mahanys and the Commission] by failure to explain the agreement or allow them to fully read the instrument. The Milton *counterclaim* alleged the fraud of the Bank by failure to explain the note or the escrow agreement or to allow sufficient opportunity to read them. The counterclaim seeks nullification of the promissory note only. Count I was adjudged for the Bank, ordered disbursement of the escrow fund to the State Highway Commission and adjudged the Stadium Bank be:

*by virtue of the judgment of this court, forever free from any liability whatsoever to either defendants* [Miltons or State Highway Commission] *by reason of payment or nonpayment of said $4150* [the escrow fund] *or any other fact arising out of its handling of the funds . . . under said escrow agreement . . . and that defendants Milton and State Highway Commission . . . are hereby forever barred and enjoined from asserting any claim against plaintiff based upon such facts.* [Emphasis added.]

The judgment on Count II was made final for purposes of appeal but none was taken.

▉▉▉▉ The contentions of the Miltons, both by defense and by affirmative pleading, allege they were induced to the successive contract events of the real estate transaction by the fraud of the Bank, the Commission and the Mahanys. A victim of fraud may elect to affirm the contract and assert damages or may repudiate the trans-

---

**2.** The precise terms of interlocutory judgment on Count I recite: IT IS FURTHER ORDERED that this judgment, although *fully determinative of the issues of liability and the amount of damages under Count I of plaintiff's petition,* is an interlocutory judgment which shall not be considered final for any purpose whatsoever including execution thereon and appeal therefrom until such time as the court shall have entered a final judgment in the matter of defendants Milton's counterclaim against plaintiff and third party claim against defendants Mahany. [Emphasis added.]

We can assume only that the parties misunderstood the nature of the cause of action pleaded by the counterclaim which was not at law, but in equity for rescission—the legal effect of the issue raised by the Milton answers.

action and be restored to status quo—but not both. *Dowd v. Lake Sites, Inc.*, 365 Mo. 83, 276 S.W.2d 108, 112[2] (1955). One cause of action accrued to the Miltons for the fraudulent real estate transaction, whatever form of the action adopted for remedy. *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10[2–5] (1948). The counterclaim elected the remedy of rescission. The cause of action to nullify the promissory note[3] was single and could not be tried once as a defense and, after final adjudication, tried again as an affirmative cause of action. *Kegan v. Park Bank of St. Joseph*, 320 Mo. 623, 8 S.W.2d 858, 872[25, 26] (1927). The issue of the fraud by the Bank to induce the Milton execution of the promissory note was raised by the pleadings in Count I and was inherently ruled adversely by the judgment for Stadium Bank. The issue of the fraud by the Bank to induce the Milton execution of the escrow agreement was raised by the pleadings in Count II and was inherently ruled adversely by the judgment for Stadium Bank and the Highway Commission. These judgments are final and conclusive as against those contentions between these parties. The Miltons had their day on the claims of fraudulent dealing by Stadium Bank. In terms of the adjudications in Count I and Count II and the later counterclaim: the public policy against proliferations of a cause of action inherent in the doctrine of res judicata bars a subsequent action for independent relief after a judgment in a prior action between the parties where the matter which forms the basis for relief was interposed as a defense. *Arata v. Monsanto Chemical Company*, 351 S.W.2d 717, 722[8] (Mo.1961); *Kegan v. Park Bank of St. Joseph*, supra, l.c. 872[25, 26]; 46 Am.Jur.2d, Judgments § 435; Annot., New Suit For Matter Set Up As Defense, 83 A.L.R. 642 (1933). The judgments for the Stadium Bank on Count I and Count

II are res judicata to the Milton counterclaim.

The judgment is affirmed.

All concur.

---

3. We need not assess the propriety of the third party petition against the Mahanys and the cross petition against the State Highway Commission in terms of these principles of election of remedies and the policy against a split cause of action. They were adjudicated properly against the Miltons on the other grounds given. We notice, however, that the third party petition seeks actual and punitive damages against the Mahanys for the fraudulent transaction in conjunction with the Bank—an ostensible affirmation of the transaction and thus, in contradiction to the nullification by rescission the counterclaim pleads.